IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RONDA SCOTT, | ) | 2:07-cv-1432-GEB-DAD |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER[*] |
| | ) | |
| CITIZEN'S COMMUNICATIONS dba | ) | |
| ELECTRIC LIGHTWAVE; | ) | |
| INTEGRA TELECOM; GREG BOGUS, | ) | |
| individually and in his official | ) | |
| capacity; MIKE HOGAN, individually | ) | |
| and in his official capacity; | ) | |
| DAVID SMITH, individually and in | ) | |
| his official capacity; GARY | ) | |
| NEIBOER, individually and in his | ) | |
| official capacity; and DOES 1-20, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

        Plaintiff Ronda Scott, a California citizen, moves to remand
this action to the state court from which it was removed, arguing that
there is no diversity jurisdiction justifying removal since three of
the defendants are also California citizens.  Defendants Integra

---

        [*]    This matter was determined to be suitable for decision without
oral argument.  L.R. 78-230(h).

1

1 | Telecom ("Integra"),[1] Greg Bogus ("Bogus"), Mike Hogan ("Hogan") and
2 | David Smith ("Smith") counter that complete diversity exists because
3 | the three defendants who would defeat diversity are "sham" defendants.
4 | (Defs.' Opp'n to Mot. to Remand ("Defs.' Opp'n") at 2:8-12.)
5 | Specifically, Defendants argue that Bogus, Hogan and Smith
6 | (collectively, "the in-state Defendants"), who are California
7 | citizens, are "sham" defendants because Plaintiff does not allege a
8 | viable claim against them and they were only named as defendants to
9 | destroy diversity. (Id.) Plaintiff disagrees, and also moves for
10 | attorney fees relating to the motion to remand.

11 |                    PLAINTIFF'S FACTUAL ALLEGATIONS

12 |         Plaintiff alleges in her Complaint, inter alia, that
13 | Integra, Defendant Gary Nieboer ("Nieboer"), and the in-state
14 | Defendants retaliated against her in violation of California
15 | Government Code section 12940.5 (the California Fair Employment and
16 | Housing Act ("FEHA")). (Pls.' Compl. ¶¶ 61-76.)

17 |         Plaintiff began working as an account executive at Integra
18 | in June 1996. (Id. ¶ 6.) Her main job duties were to sell and
19 | install telecommunication services. (Id.)

20 |         In September 2003, Plaintiff was diagnosed with
21 | fibromyalgia, a musculoskeletal disease that resulted in chronic pain,
22 | irritable bowel syndrome, narcolepsy and fatigue. (Id. ¶¶ 10, 12.)
23 | She took a twelve-week leave of absence from work because of the

---

[1]    Defendants assert that Plaintiff erroneously named the corporation that employed her as "Citizen's Communications dba Electric Lightwave; Integra Telecom." Instead, Defendants assert that the corporation is "Electric Lightwave LLC dba Integra Telecom." (Integra and Hogan's Not. of Removal ("Removal") at 2:6-7.) This order will refer to the corporation that employed Scott at all relevant times as "Integra."

disability.  (Id. ¶ 11.)  Her symptoms made it difficult to sit for extended periods of time, especially in the morning, and it was difficult for her to commute to work and sit at her desk.  (Id. ¶ 13.) When her symptoms had a "flare-up," she had to take an increased dosage of medication that made her unable to drive to work.  (Id.) Based on Plaintiff's difficulty commuting and pain in the mornings, her supervisors permitted her to work from home up to three times per week.  (Id. ¶ 14.)

In April 2005, Smith became Plaintiff's supervisor.  (Id. ¶¶ 14-15.)  Smith knew that Plaintiff had fibromyalgia and that this made it difficult for her to attend morning meetings, but required her attendance nonetheless.  (Id. ¶ 24.)

In January 2006, Plaintiff submitted a "FMLA request."[2] (Id. ¶ 16.)  After submitting this request, Plaintiff alleges that Smith retaliated against her by instructing her to introduce him to the sales contacts of all her best clients and by telling her she should consider leaving the job because of her health problem.  (Id. ¶ 17.)

In March 2006, Nieboer gave Plaintiff a negative performance evaluation for 2005.  (Id. ¶ 36.)  Plaintiff alleges that she received this negative review because she had "filed for FMLA."  (Id.)  Nieboer also issued Plaintiff a "corrective action memo," which criticized Plaintiff's performance on a variety of grounds Plaintiff alleges were baseless, including Plaintiff's failure to attend morning meetings,

---

[2]     Though Plaintiff does not allege what her specific request was, it was presumably a request for leave under the Family and Medical Leave Act.

1  failure to process orders in a timely fashion, and failure to be

2  reachable when out of the office.  (Id. ¶¶ 19-34.)

3        Also in March 2006, Hogan was promoted to sales manager and

4  became Plaintiff's new supervisor.  (Id. ¶ 18.)  The position had not

5  been posted and Integra had not undertaken a competitive selection

6  process, contrary to company policy.  (Id.)  Plaintiff alleges that

7  she was the "most qualified candidate" for this position.  (Id.)

8        In May 2006, Hogan issued Plaintiff a "Final Written

9  Warning" purporting to document Plaintiff's poor performance as

10  outlined in the negative 2005 performance evaluation, but at the time

11  the warning was issued, Plaintiff was the top performer in sales.

12  (Id. ¶ 40.)

13        In June 2006, Plaintiff sought accommodations for her

14  disability by speaking with the human resources department at Integra.

15  (Id. ¶¶ 45-50.)  Accommodations were eventually granted in October

16  2006.  (Id. ¶ 50.)  One accommodation permitted Plaintiff to

17  telecommute on a regular basis and arrive at the office later in the

18  day.  (Id. ¶ 59.)

19        On December 13, 2006, Hogan issued Plaintiff another "Final

20  Written Warning" based on Plaintiff's failure to meet a "new logo

21  quota."  (Id. ¶ 58.)  Hogan also criticized Plaintiff for failing to

22  arrive at work for scheduled meetings.  (Id. ¶ 60.)  He told Plaintiff

23  that she would not be permitted to telecommute anymore.  (Id. ¶¶ 38,

24  40.)  Hogan further required Plaintiff to attend 11:00 a.m. meetings

25  with him every morning to discuss her daily activity, despite her

26  accommodation.  (Id. ¶ 60.)  In the alternative, Plaintiff was allowed

27  to call Hogan at 11:00 a.m. if she was unable to attend the morning

28

1 | meeting.  (<u>Id.</u>)  No other sales representatives were required to

2 | attend daily meetings.  (<u>Id.</u>)

3 |      For four days, Plaintiff complied with Hogan's directive to

4 | meet with him or call him at 11:00 a.m.  (<u>Id.</u>)  Plaintiff met with

5 | Hogan on one day, and called him on the other three days.  (<u>Id.</u>)

6 | Hogan then fired Plaintiff on December 20, 2006.  (<u>Id.</u>)  Plaintiff

7 | alleges that Hogan justified the termination by indicating that the

8 | reason she was fired was for not meeting with Hogan in person every

9 | day at 11:00 a.m., but that "Hogan's discriminatory intent [was]

10 | obvious."  (<u>Id.</u>)

11 |      Plaintiff alleges that Defendants retaliated and

12 | discriminated against her in violation of the FEHA.  (<u>Id.</u> ¶¶ 61-110.)

13 | Plaintiff alleges that even though she "complained of sex and

14 | disability discrimination" during her employment, "Defendants did not

15 | take immediate corrective actions to stop [the] discriminatory

16 | conduct."  (<u>Id.</u> ¶ 67.)  Plaintiff alleges that because she "object[ed]

17 | to, and oppos[ed], this discriminatory conduct," Defendants retaliated

18 | against her by failing to hire her for the sales manager position,

19 | giving her bad evaluations, harassing her, and firing her.  (<u>Id.</u> ¶¶

20 | 65-67.)  Plaintiff further alleges that the in-state Defendants were

21 | "in a supervisory capacity over Plaintiff" and that they "either

22 | caused or directed all, or most, of the acts perpetrated against

23 | Plaintiff described [in the Complaint]."  (<u>Id.</u> ¶ 64.)

## DISCUSSION

24 |

25 | <u>I.  Motion to Remand</u>

26 |      The issue is whether Plaintiff has stated a claim against

27 | non-diverse defendants "sufficient to withstand a dismissal motion

28 | under Rule 12(b)(6)."  <u>See</u> <u>Sessions v. Chrysler Corp.</u>, 517 F.2d 759,

761 (9th Cir. 1975).  If so, the defendants are not "sham" defendants and the motion to remand should be denied.  Id.  To be a "sham" defendant, the failure to state a claim against that defendant must be "obvious" under settled state law.  McCabe v. Gen. Foods Corp., 811 F.2d 1336, 1339 (9th Cir. 1987).

Pleadings need contain only a "short and plain" statement of the claim.  Fed. R. Civ. P. 8(a).  The allegations in Plaintiff's Complaint are construed in the light most favorable to Plaintiff and all reasonable inferences are drawn in Plaintiff's favor.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996); Retail Clerks Int'l Ass'n v. Shermerhorn, 373 U.S. 746, 753 n.6 (1963).  Moreover, to be a "sham" defendant, Plaintiff's failure to state a claim against that defendant must be "obvious" under settled law of the state.  McCabe, 811 F.2d at 1339.

Plaintiff alleges the in-state Defendants retaliated against her in violation of the FEHA.  (Pls.' Compl. ¶¶ 61-76.)  To establish a prima facie case of retaliation under the FEHA, Plaintiff "must show (1) . . . she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action."  Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1042 (2005).

First, Plaintiff has alleged that she "complained of sex and disability discrimination" while an employee at Integra.  (Pls.' Compl. ¶ 67.)  This is a protected activity under the FEHA.  Cal. Gov't Code § 12940(h); see Yanowitz, 36 Cal. 4th at 1043 ("[A]n employee's conduct may constitute a protected activity for purposes of the antiretaliation provision of the FEHA . . . when the employee

1  opposes conduct that the employee reasonably and in good faith
2  believes to be discriminatory . . . .").

3       Second, Plaintiff alleges that the in-state Defendants,
4  including Hogan, retaliated against her by firing her, which
5  constitutes an adverse employment action.  See Loggins v. Kaiser
6  Permanente Int'l, 151 Cal. App. 4th 1102, 1109-10 (2007).

7       Third, Plaintiff alleges a causal link between her
8  complaints about discriminatory conduct and the adverse employment
9  action.  Plaintiff alleges in paragraph 67 of the Complaint: "During
10 the time of plaintiff's employment . . . , Plaintiff complained of sex
11 and disability discrimination [and that] Defendants did not take
12 immediate corrective actions to stop . . . the discriminatory
13 conduct."  (Pls.' Compl. ¶ 67.)  Plaintiff alleges she was "retaliated
14 against for objecting to, and opposing, this discriminatory conduct."
15 (Id.)  Plaintiff also alleges that the in-state Defendants were "in a
16 supervisory capacity over Plaintiff" and that they "either caused or
17 directed all, or most, of the acts perpetrated against Plaintiff
18 . . . ."  (Id. ¶ 64.)  Further, Plaintiff alleges that when Hogan
19 fired her, his "discriminatory intent [was] obvious."  (Id. ¶ 60.)

20      Defendants argue that these allegations are insufficient
21 because (1) they are "brief and conclusory," (2) no other part of the
22 Complaint "details or even alludes to any complaints by Plaintiff to
23 anyone," (3) there is no way to tell which defendant failed to take
24 corrective action because Plaintiff fails to define "Said Defendants,"
25 and (4) the concluding sentence of paragraph 67 fails to identify the
26 alleged retaliators.  (Defs.' Opp'n at 6:8-7:8.)

27      Under the liberal pleading standard, however, Plaintiff has
28 adequately pled a claim for retaliation.  The paragraph of the

Complaint immediately prior to paragraph 67 begins with "Defendants Bogus, Hogan, Smith and Neiboer . . . ."  (Id. ¶ 66.)  It is reasonable to infer that the reference in paragraph 67 to "Said Defendants" refers to these defendants, including Hogan, who allegedly retaliated against Plaintiff by firing her.  (See Pls.' Compl. ¶ 67.) It is also reasonable to infer that the retaliation referenced in the final sentence of paragraph 67 was carried out by Hogan, especially considering that Plaintiff also specifically alleges (1) that Hogan fired her and his "discriminatory intent [was] obvious," and (2) that "Defendants Bogus, Hogan, Smith and Neiboer either caused or directed all, or most, of the acts perpetrated against Plaintiff . . . ."  (Id. ¶¶ 60, 64.)  Accordingly, at least one of the in-state Defendants is on notice of the claim against him.

Because Plaintiff has stated a claim against at least one in-state defendant, Defendants' removal based on diversity jurisdiction was improper since complete diversity does not exists. Accordingly, Plaintiff's motion to remand is granted.

II.  Attorney Fees

Plaintiff requests attorney fees she incurred as a result of bringing the motion to remand under 28 U.S.C. § 1447(c).  (Pls.' Not. of Mot. and Mot. to Remand at 5:3-4.)  "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.  Conversely, when an objectively reasonable basis exists, fees should be denied."  Martin, 546 U.S. at 141.

While Defendants have not demonstrated that the in-state Defendants are "sham" defendants, their basis for removal was

objectively reasonable.   Therefore, Plaintiff's motion for attorney fees is denied.

CONCLUSION

        Plaintiff's motion to remand is granted.   Plaintiff's motion for attorney fees is denied.

IT IS SO ORDERED.

September 28, 2007

                                    _____
                                    GARLAND E. BURRELL, JR.
                                    United States District Judge